## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SHIRL A. HONEY,                          )
                                         )
                    Plaintiff,           )
                                         )
        v.                               )        C.A. No. 19-1646-TMH
                                         )
DOVER DOWNS, INC.,                       )
a Delaware corporation,                  )
                                         )
                    Defendant.           )

## <u>MEMORANDUM OPINION</u>

William D. Fletcher, Jr., Gary E. Junge, Sᴄʜᴍɪᴛᴛɪɴɢᴇʀ & Rᴏᴅʀɪɢᴜᴇᴢ, P.A., Dover, DE – Attorneys for Plaintiff

James H. McMackin, III, Mᴏʀʀɪs Jᴀᴍᴇs LLP, Wilmington, DE – Attorney for Defendant

December 9, 2021
Wilmington, DE

1    **HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

2    Pending before me is Defendant Dover Downs, Inc.'s motion for summary

3    judgment, requesting I dismiss Plaintiff Shirl A. Honey's claims as a matter of law.

4    For the reasons set forth below, I grant-in-part and deny-in-part Dover Downs's

5    motion.

6    **I.    BACKGROUND**

7    Ms. Honey filed suit against Dover Downs on September 4, 2019, alleging that

8    Dover Downs violated Title VII of the Civil Rights Act by (1) discriminating on the

9    basis of sex by firing Ms. Honey in retaliation for her reports of sexual harassment

10   and (2) maintaining a hostile work environment toward women. D.I. 1, at 5.

11   A.    Termination

12   On December 2, 2017, an unknown patron lost $5,000 in cash at Dover Downs.

13   D.I. 35, at 2. The money was turned over to the security department, for which

14   Ms. Honey worked. *Id.* at 1–2. Seven weeks later, on January 26, 2018, a man named

15   Juan Valentin attempted to claim the money. *Id.* at 2.

16   Dover Downs found it suspicious that Mr. Valentin had waited so long to claim

17   the lost money, so it began looking into Mr. Valentin's background. *Id.* at 2–3; D.I. 37,

18   Attachment #1 (*Motion Attachment*) at A35. Dover Downs began an investigation

19   involving the State of Delaware Division of Gaming Enforcement. After interviewing

20   Ms. Honey, her fiancé, and Mr. Valentin on February 7, 2018, Dover Downs

21   concluded that Ms. Honey had either intentionally or unintentionally disclosed the

22   existence of the money to her fiancé, and her fiancé had then conspired with his

1

1    brother-in-law, Mr. Valentin, to claim it. D.I. 35, at 3–4; *Motion Attachment* at A22–

2    23, A36–38.

3        Dover Downs fired Ms. Honey on February 14, 2018. D.I. 35, at 4. Janie Libby,

4    then Vice President of Human Resources, and Peter Bradley, then Vice President and

5    General Manager, made the decision to terminate Ms. Honey. *Motion Attachment* at

6    A58–59. Ed Sutor, President and CEO of Dover Downs, was informed of the decision

7    "beforehand because he and [Ms. Honey] had a close relationship." *Id.* at A59. Finally,

8    on March 16, 2018, the Lottery Commission of the State of Delaware revoked

9    Ms. Honey's Lottery License and instructed that "[t]his individual is not to be

10   employed in a licensed position until further notice from the Director of the Lottery."

11   *Id.* at A42.

12       B.    <u>Sexual Harassment</u>[1]

13       In 2005, Ms. Honey witnessed acts of sexual harassment by Joe McNair and

14   by Herman Lee Ford, Surveillance Director at Dover Downs, whom Ms. Honey

15   worked for at the time of the incident. D.I. 40, at 4. When the harassed employee

16   reported the incident, Mr. McNair and Mr. Ford told Ms. Honey to "shut her mouth"

17   and lie about what she saw. *Id.*

18       More recently, Ms. Honey separately reported two instances of sexual

19   harassment to her direct supervisor, Marie Jerdan. *Id.* at 5–6. First, in August 2017,

---

[1]    Dover Downs disputes Ms. Honey's allegations involving sexual harassment. However, Dover Downs asserts that it is entitled to summary judgment even if her allegations are taken as true. Therefore, we describe Ms. Honey's sexual harassment allegations as "facts" for the limited purpose of reviewing Dover Downs's motion for summary judgment.

Steven Webb, the Purchasing Manager at Dover Downs, "was walking with [Ms.] Honey when he made graphically suggestive remarks to the effect of wanting to have sex with [her]." *Id.* at 5. Mr. Webb warned Ms. Honey not to complain about what he had done because he was friends with the CEO, Mr. Sutor. *Id.* When she reported the incident to Ms. Jerdan, Ms. Honey was told that nothing could be done because Mr. Webb was friends with Mr. Sutor. *Id.*

Second, in February 2018, Mr. Ford made "graphic comments about drilling a hole in the wall between [Mr. Ford's and Ms. Honey's] offices and performing certain sex acts." *Id.* at 4. When she reported the incident to Ms. Jerdan, Ms. Honey was told that nothing could be done because Mr. Ford had worked for Dover Downs for 22 years. *Id.* at 6. Ms. Honey also implies, in her brief, that Dover Downs did not act on this second complaint because Mr. Ford and Mr. Sutor were friends. *See id.* at 14 (discussing "Webb's and Ford's known friendship with Sutor"). The record does not indicate that Ms. Honey reported the harassment to anyone else at Dover Downs.

During her deposition, Ms. Honey testified that similar harassment by Mr. Ford had been ongoing for "a long time" but that she did not include this information in her complaint "because she did not know dates" on which the harassment had occurred. *Id.* at 4. Later in the deposition, Ms. Honey recanted these claims of ongoing harassment. *Id.*

## II.   **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

1    matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of proving the

2    absence of a genuinely disputed material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

3    323 (1986). When determining whether a genuine issue of material fact exists, district

4    courts must view the evidence in the light most favorable to the non-moving party

5    and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372,

6    380 (2007). The burden then shifts to the non-movant to demonstrate the existence

7    of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

8    U.S. 574, 586–87 (1986). If the non-movant does not overcome its burden, then the

9    movant is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

10    **III.**    **DISCUSSION**

11    A.    Retaliation Claim

12    "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must

13    tender evidence that: '(1) she engaged in activity protected by Title VII; (2) the

14    employer took an adverse employment action against her; and (3) there was a causal

15    connection between her participation in the protected activity and the adverse

16    employment action.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir.

17    2006) (citation omitted).

18    District courts analyze retaliation claims under the *McDonnell Douglass*

19    burden-shifting framework. *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257

20    (3d Cir. 2017). Under this framework, the plaintiff has the initial burden of

21    production to establish a prima facie case of retaliation. *Id.* At this stage, "the plaintiff

22    must produce evidence 'sufficient to raise the inference that her protected activity

1  was the *likely reason* for the adverse [employment] action.'" *Id.* at 259 (alteration in

2  original) (citation omitted). Once established, the burden of production "shifts to the

3  employer to provide a legitimate non-retaliatory reason for its conduct." *Id.* at 257

4  (citation omitted). If the defendant satisfies this burden, the burden of production

5  shifts back to the plaintiff *and* the plaintiff must satisfy its ultimate burden of

6  persuasion "to convince the factfinder both that the employer's proffered explanation

7  was false [that is, a pretext], and that retaliation was the real reason for the adverse

8  employment action" *Id.* (alteration in original) (citation omitted).

9      Dover Downs argues that Ms. Honey's retaliation claim should be dismissed

10  on summary judgment because she cannot establish causation between the protected

11  activity—reporting incidents of sexual harassment—and her termination. As to

12  causation, a plaintiff can meet her burden of production "by[, for example,] proffering

13  evidence of an employer's inconsistent explanation for taking an adverse employment

14  action, a pattern of antagonism, or temporal proximity 'unusually suggestive of

15  retaliatory motive.'" *Id.* at 260 (citations omitted). I am mindful to not employ "too

16  restrictive a view of the type of evidence that can be considered probative of the causal

17  link" and recognize that causation can be inferred from not only "timing and

18  demonstrative proof," but also from "other evidence gleaned from the record as a

19  whole." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).

20      To establish causation, Ms. Honey relies primarily on temporal proximity and

21  correctly asserts that "temporal proximity between the employee's protected activity

22  and the alleged retaliatory action may satisfy the causal link element of a *prima facie*

1   retaliation claim, at least where the timing is unusually suggestive." D.I. 40, at 15

2   (quoting *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000)); *see also Farrell*, 206

3   F.3d at 280 ("[T]emporal proximity alone will be insufficient to establish the

4   necessary causal connection when the temporal relationship is not 'unusually

5   suggestive.'" (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997))).

6   Ms. Honey argues that "[t]he temporal proximity of [her] termination to her reporting

7   of the sexual harassment she experienced clearly indicates Dover Downs'[s] true

8   reason for termination was retaliation for reporting friends of the President and CEO

9   of Dover Downs for sexual harassment." D.I. 40, at 2; *see also* D.I. 40 at 15–16.

10      I note that Ms. Honey's complaint and summary judgment brief do not identify

11   the exact date that Ms. Honey reported the 2018 harassment by Mr. Ford to

12   Ms. Jerdan, *see* D.I. 1 ¶¶ 24–26 (stating generally, "[i]n February 2018"); D.I. 40, at

13   5–6 (same); *Motion Attachment* at A15, 69:7–15 (stating that she did not know the

14   exact date of her complaint to Ms. Jerdan), making it difficult to evaluate temporal

15   proximity in terms of number of days between the protected activity and adverse

16   action. Although "there is no bright-line rule" for what period of time satisfies

17   temporal proximity, *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018), the

18   Third Circuit has recognized that even short periods of time—for example, three

19   weeks between a complaint and termination letter—might not establish causation,

20   *see Thomas v. Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (affirming summary

21   judgment after identifying that three weeks had passed between the complaint and

22   termination and determining that the context of the record as a whole did not

1   establish the causation requirement of the retaliation claim); *Carvalho-Grevious*, 851

2   F.3d at 260–61 (same, but 19 days). Regardless, the Third Circuit has "emphasized

3   that 'temporal proximity merely provides an evidentiary basis from which an

4   inference [of causation] can be drawn. The element of causation, which necessarily

5   involves an inquiry into the motives of an employer, is highly context-specific.'"

6   *Carvalho-Grevious*, 851 F.3d at 260 (alteration in original) (quoting *Kachmar v.*

7   *SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997)).

8          Here, no reasonable jury could find the temporal proximity of the protected

9   activity and adverse action unusually suggestive considering the context of Ms.

10  Honey's termination. It is undisputed that Ms. Honey told her fiancé about the $5,000

11  in cash found at Dover Downs, D.I. 40, at 7; *Motion Attachment* at A22, 109:13–23,

12  that Mr. Valentin attempted to claim the money seven weeks later, *Motion*

13  *Attachment* at A4, 8:14–19, and that Ms. Honey's fiancé knew Mr. Valentin, *Motion*

14  *Attachment* at A4, 9:13–18 And Dover Downs discovered Ms. Honey's improper

15  disclosures only one week before it terminated her, when it interviewed Ms. Honey,

16  her fiancé, and Mr. Valentin on February 7, 2018. Regardless of whether her

17  disclosure was intentional or inadvertent, Dover Downs states that the incident

18  caused the company to "los[e] confidence in [Ms. Honey]" and resulted in her

19  termination. D.I. 35, at 4; *see also Motion Attachment* at A4, 9:6–12 (confirming

20  Ms. Honey's understanding of this explanation).

21          Further, although Ms. Honey reported the sexual harassment to Ms. Jerdan,

22  Ms. Honey produced no evidence that Ms. Jerdan disclosed that information to any

other Dover Downs employees, especially not the employees who made the decision to fire Ms. Honey. Dover Downs affirmatively alleges that the individuals involved in the termination decision were not aware of the sexual harassment allegations, and Ms. Honey provides no sufficient counter. During deposition, Ms. Honey even admitted that she did not know if the individuals who terminated her knew that she had reported sexual harassment. *Motion Attachment* at A28, 131:9–13. And she took no steps to obtain this information, leaving nothing in the record to provide a basis for reasonably inferring otherwise. Ms. Honey "cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of [her] protected conduct at the time they acted." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196–97 (3d Cir. 2015).

Finally, "[a]lthough [Ms. Honey] makes passing reference to the 'record as a whole,' the dearth of evidence [s]he offers does not imply causation." *Dondero v. Lower Milford Twp.*, 5 F.4th 355, 362 (3d Cir. 2021) (citation omitted). In light of the evidence on record, a reasonable factfinder would determine that Ms. Honey "has failed to produce evidence . . . that her engagement in a protected activity was the *likely reason* for [her] . . . termination," and, accordingly, there is no genuine issue for trial. *Carvalho-Grevious*, 851 F.3d at 261. Because no reasonable jury could find that the likely reason for Ms. Honey's termination was retaliatory animus for her reports of sexual harassment, I grant summary judgment on Ms. Honey's claim at the prima facie stage of the *McDonnell Douglass* burden-shifting framework.

1    Even assuming Ms. Honey can survive summary judgment at the prima facie

2    stage, I still grant summary judgment on her retaliation claim. If a plaintiff

3    establishes a prima facie case of retaliation, the burden of production shifts to the

4    defendant to proffer a legitimate reason for the adverse action. *See Daniels*, 776 F.3d

5    at 198. And if the employer articulates a legitimate reason, the burden then shifts

6    back to the plaintiff, who "must point to some evidence, direct or circumstantial, from

7    which a factfinder could reasonably either (1) disbelieve the employer's articulated

8    legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more

9    likely than not a . . . determinative cause of the employer's action." *Id.* at 198–99

10   (alterations in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

11   The plaintiff "must demonstrate such 'weaknesses, implausibilities, inconsistencies,

12   incoherences, or contradictions in the employer's proffered legitimate reason for its

13   action that a reasonable factfinder could rationally find them unworthy of credence,

14   and hence infer that the employer did not act for [the asserted] nondiscriminatory

15   reasons.'" *Id.* at 199 (alteration in original) (quoting *Ross v. Gilhuly*, 755 F.3d 185,

16   195 n.13 (3d Cir. 2014)).

17   Ms. Honey identifies the following factual defects in Dover Downs's argument

18   to show that its reason for terminating her was pretextual: (1) her fiancé's arrest

19   record is unsupported by evidence or lacks context, (2) her conversation with her

20   fiancé about the lost $5,000 was not inappropriate, and (3) her fiancé and

21   Mr. Valentin were never charged with a crime. D.I. 40, at 17–18. Viewing these facts

22   in the light most favorable to Ms. Honey and drawing all reasonable inferences in her

favor (i.e., taking these factual defects as true), no reasonable jury could believe that Dover Downs's reason for firing Ms. Honey was pretextual. As discussed above, Ms. Honey disclosed the existence of the missing cash to her fiancé and, a few weeks later, her fiancé's brother-in-law attempted to claim the cash. Dover Downs and the State of Delaware Division of Gaming Enforcement investigated the incident. And Dover Downs concluded that Mr. Valentin was wrongly trying to claim money that was not his. This incident caused Dover Downs to lose confidence in Ms. Honey and resulted in her termination. Ms. Honey has not identified evidence that would cast doubt on this explanation. And she even admitted in her deposition that she believes Dover Downs did not fabricate the incident. *See Motion Attachment* at A5, 11:14–17 ("Q. Do you have any suspicion that Dover Downs created this effort to find and collect $5,000 so that they could fire you? A. I don't."); *see also id.* at A5, 11:18–23 (admitting she did not believe she was "fired as a result of the effort to collect the $5,000 in order to punish [her] for having reported sexual harassment").

Therefore, I grant Dover Downs's motion for summary judgment as to Ms. Honey's retaliation claim.

B.   Hostile Work Environment Claim

A plaintiff must prove five elements to establish a hostile work environment claim: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable

1   person in like circumstances, and 5) the existence of *respondeat superior* liability."

2   *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

3       Dover Downs raises three grounds for summary judgment. First, Dover Downs

4   argues that no reasonable jury could find that any alleged discrimination was severe

5   or pervasive. Dover Downs focuses on frequency, arguing that the factual record

6   details only two allegations of sexual harassment[2] and that, even if true, two

7   instances are not enough to be "persistent." D.I. 35, at 13–14. But that is not the

8   applicable standard: While the Third Circuit *used* to require discrimination to be

9   "pervasive and regular," *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d

10   Cir. 1990), *superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166,

11   105 Stat. 1072, it has since clarified that "[t]he correct standard is 'severe *or*

12   pervasive.'" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017).

13       This means the plaintiff does not need to allege multiple sexual harassment

14   incidents. Even "one severe incident may be enough to create a hostile work

15   environment." *Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 293–94 (3d Cir.

16   2019). "[T]he complained of discriminatory conduct was . . . physically humiliating,

---

[2]   During deposition, Ms. Honey raised new allegations that were not in her complaint, saying "harassment by Ford had been going on for years." D.I. 40, at 4, 12; *see Motion Attachment* at A14–15, 58:2–67:4 (detailing new allegations). But then, during the same deposition, Ms. Honey recanted her statement that the harassment had been ongoing for years. D.I. 40, at 4, 11; *Motion Attachment* at A29, 136:23–137:10. Ms. Honey now reasserts the new allegations and says that she previously recanted because she was answering "[i]n the pressure of a deposition." D.I. 40, at 11. Dover Downs argues that this is improper. *See* D.I. 35, at 16 n.22. I do not address this issue because it does not affect the summary judgment decision.

1    and much more than a mere offensive utterance. [Mr.] Webb made bodily contact with

2    [Ms.] Honey, and the vulgar comments made by both gentlemen were of the type that

3    no female employee should have to tolerate." D.I. 40, at 11. Here, a reasonable jury

4    could find that Mr. Webb's and Mr. Ford's harassment of Ms. Honey was severe

5    enough to create a hostile work environment.

6         The cases that Dover Downs cites are inapposite, as they are largely fact-

7    specific. *See, e.g.*, *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("The

8    ordinary terms and conditions of respondent's job required her to review the sexually

9    explicit statement in the course of screening job applicants."); *Paris v. Christiana*

10   *Care Visiting Nurse Ass'n*, 197 F. Supp. 2d 111, 118–19 (D. Del. 2002) ("[T]he

11   comments at issue were not severe in an objective sense" because "the comments were

12   not directed at" the plaintiff, "[f]ive of the six comments were not of a sexually explicit

13   nature," the sixth comment "was made while discussing Bill Clinton and Monica

14   Lewinsky" and was not used "to proposition" the plaintiff, and none of the comments

15   "implied that [the plaintiff] or women in general did not belong in the workplace.");

16   *Selvato v. SEPTA*, 658 F. App'x 52, 55 (3d Cir. 2016) ("[T]he two

17   comments . . . (concerning stalking pictures on Facebook and 'petting' flowers on her

18   blouse), though offensive, did not rise to the . . . level of physical threat necessary to

19   establish a prima facie hostile work environment claim."). Indeed, one case even

20   clarifies that "[t]he court believes that a single act of harassment because of sex may

21   be sufficient to sustain a hostile work environment claim." *Bedford v. Se. Pa. Transp.*

1    *Auth.*, 867 F. Supp. 288, 297 (E.D. Penn. 1994). Therefore, Dover Downs does not

2    meet its burden under this first ground.

3        Second, Dover Downs argues that no reasonable jury could find the existence

4    of respondeat superior liability (i.e., that Dover Downs was responsible for its

5    employees' harassment). Dover Downs maintains that Ms. Honey had a duty to

6    mitigate harm, that she did not reasonably report the harassment, and that she

7    would have avoided harm had she done so. D.I. 35, at 15–16 (citing *Faragher v. City*

8    *of Boca Raton*, 524 U.S. 775, 806–07 (1998)). Dover Downs contends that Ms. Honey's

9    report of harassment to Ms. Jerdan was not reasonable because Ms. Jerdan was not

10   in human resources and because Ms. Honey and Ms. Jerdan "did not like each other."

11   *Id.* at 15.

12       Ms. Honey asserts that her actions were reasonable because she followed

13   company policy when she reported the incident to Ms. Jerdan, a member of the

14   management team. "The Company Policy entitled No Discrimination or Harassment

15   states at paragraph 4: 'If employees believe they are being treated in an unlawful,

16   discriminatory manner or experiencing any job-related harassment in accordance

17   with this Policy, they must report it immediately to any member of the management

18   team or the Human Resources Department.'" D.I. 40, at 18; *Motion Attachment* at

19   A52. Plainly, the company policy on record does not require Ms. Honey to report

20   harassment only to human resources, as Dover Downs implies. *See* D.I. 35, at 15

21   ("While Jerdan was Plaintiff's supervisor, she was not in human resources . . . .").

22   Rather, it also permits reporting harassment to "any member of the management

team." *Motion Attachment* at A52. A reasonable jury could find that Ms. Honey appropriately reported the sexual harassment. Therefore, Dover Downs's second ground cannot serve as a basis for summary judgment.

Third, Dover Downs launches another attack on respondeat superior liability by arguing that Ms. Honey did not make subsequent allegations of harassment after she submitted her complaints. According to Dover Downs, this indicates that Dover Downs appropriately addressed Ms. Honey's complaints. D.I. 35, at 17. Dover Downs attempts to show that it exercised reasonable care to prevent and promptly correct the harassing behavior. *Id.* But there is no evidence on the record that Dover Downs took any corrective action after receiving Ms. Honey's complaints. In fact, the record suggests the opposite: When Ms. Honey reported the sexual harassment to her supervisor, she was told that nothing could be done about it. D.I. 40, at 5–6. A reasonable jury could find that Dover Downs did not take corrective action. Therefore, Dover Downs's third ground cannot serve as a basis for summary judgment.

Accordingly, I deny Dover Downs's motion for summary judgment as to Ms. Honey's hostile work environment claim.

## IV.   **CONCLUSION**

For the foregoing reasons, I grant Dover Downs's motion for summary judgment as to Ms. Honey's retaliation claim and deny the motion as to Ms. Honey's hostile work environment claim.